## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **STEVEN HENDERSON,** *et al.* | ) | **CASE NO.  4:04 CV 01742** |
| | ) | |
| | ) | **JUDGE PETER C. ECONOMUS** |
| **PLAINTIFFS** | ) | |
| | ) | |
| **V.** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **TRUMBULL COUNTY, OHIO,** | ) | |
| *et al.* | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

This matter is before the Court upon the following motions: (1) Summary Judgment Motion of Defendants Trumbull County Children Services Board and Robert Kubiak (applicable also to unidentified CSB Supervisors and Employees), see (Dkt. # 22); (2) Motion for Summary Judgment of City of Warren Police Department, see (Dkt. # 26); (3) Motion for Summary Judgment of Defendant City of Warren, Ohio, see (Dkt. # 27); and (4) Motion for Summary Judgment, see (Dkt. # 29), filed on behalf of Trumbull County, Ohio, Trumbull County Prosecutor's Office, Sarah Kovoor, Dennis Watkins, and John Doe Supervisors, One-Five.

## I.        BACKGROUND

*Factual History*

The following facts are undisputed unless otherwise noted.  The Grand Jury for the Court of Common Pleas, Trumbull County, Ohio (the "Grand Jury") issued an indictment on July 9, 1998 charging the Plaintiff, Steven Henderson ("Henderson"), with one count of Rape, a violation of Ohio Revised Code section 2907.02 (A)(1)(b)(2).  See (Dkt. # 1, Compl. ¶ 23; Dkt. # 31 ¶ 6; Dkt. # 44, Pls.' Resp to Def.'s [sic] Mots. for Summ. J. ("Pls.' Resp.") Ex. A).  The indictment charged that Henderson "did engage in sexual conduct with another who is not the spouse of the offender, and the victim is less than thirteen years of age, whether or not the offender knew the age of the victim, and the offender compelled the victim to submit by force or threat of force." (Pls.' Resp., Ex. A.) Henderson immediately was arrested and incarcerated by Defendant, City of Warren Police Department ("WPD"). See (Dkt. # 1, Compl. ¶ 24; Dkt. # 31 ¶ 8; Pls.' Resp. at 1).

Defendant, then Assistant Trumbull County Prosecutor Sarah Kovoor ("Attorney Kovoor"), filed a bill of particulars asserting that Henderson "sexually assaulted a [minor]" by "[taking] the victim to her bedroom and forc[ing] her to have vaginal intercourse with him." (Dkt. # 1, Compl. ¶¶ 25-26; Pls.' Resp. at 2 & Ex. B attached thereto).  The case thereafter proceeded to trial and the jury returned a verdict of guilty against Henderson.  See (Dkt. # 1, Compl. ¶ 33; Pls.' Resp at 4).  The trial court sentenced Henderson to a term of life imprisonment, as well as classified Henderson as a sexually oriented offender.  See (Dkt. # 1, Compl. ¶ 33; Dkt. # 31 ¶ 9; Pls.' Resp. at 4).

Henderson appealed his conviction and sentence asserting various assignments of

error.  See (Dkt. # 1, Compl. ¶ 34; Dkt. # 31 ¶ 9; Pls.' Resp. at 4).  The state appellate court determined that several of Henderson's claims were well-taken and reversed the conviction.  See Ohio v. Henderson, No. 99-T-0001, 2000 Ohio App. LEXIS 4579 (11th Dist., Sept. 29, 2000).  Specifically, the appellate court found that the trial court erred by failing to hold a hearing on Henderson's claims that his mother-in-law sought to influence jurors during the trial.[1]  See id.  Additionally, the appellate court found that Attorney Kovoor had engaged in prosecutorial misconduct by expressing personal opinions regarding the veracity of witnesses,[2] denigrating the defendant,[3] and encouraging the jury to disregard the quantum of evidence in favor of imposing only a guilty verdict[4].  See (Dkt. # 1, Compl. ¶¶ 35–37, 40-43).  Moreover, the appellate court determined that the failure of defense counsel to object to Attorney Kovoor's conduct constituted ineffective assistance of counsel.  See id.

Defendant, Trumbull County Prosecutor's Office ("TCPO"), re-tried Henderson on

---

[1] The Ohio appellate court found that Henderson's mother-in-law flashed photographs to the jury during the trial that bore pictures of her bruised daughter.  Before the rape trial, Henderson had been convicted of domestic violence involving his wife.  The mother-in-law purportedly attempted to show these photographs to jurors in and around the courthouse.

[2] The Ohio appellate court found that Attorney Kovoor repeatedly opined that the victim and the victim's mother would present the only true account of the alleged rape.  She also expressed her view, without any supporting evidence, that Henderson forged a lease produced by the defense at trial.  The lease was introduced into evidence for the purpose of demonstrating that Henderson did not reside in the same building as the victim.

[3] The Ohio appellate court found that Attorney Kovoor repeatedly referred to Henderson as a "forger," a "thief," and a "drug addict."  While Henderson previously had been convicted of receiving stolen property and forgery, there was no evidence presented to the jury that he was a drug user.

[4] The Ohio appellate court found that Attorney Kovoor advised the voir dire panel that "the correct" verdict in a child molestation case was guilty.  She also advised the voir dire panel that guilty verdict had been reached in a number of specific and notable child rape cases, despite a complete lack of physical evidence.

the charge of Rape.  See (Dkt. # 1, Compl. ¶ 44; Dkt. # 31 ¶ 11; Pls.' Resp. at 6).

At the second trial, the TCPO presented testimony from the victim and ten other witnesses.  See Ohio v. Henderson, No. 2001-T-0001, 2002 Ohio 6715, 2002 Ohio App. LEXIS 6498 (11th Dist., Dec. 6, 2000).  The victim, who was eleven-years-old at the time of the alleged assault, testified that sometime in early 1997, her mother left her and her little brother with Henderson.  See id.  The victim claimed that Henderson ordered her and her little brother into a bedroom where he then instructed the victim to "pull down [her] pants and lay on the bed[.]"  See id.  The victim told the jury that after doing so Henderson got on top of her, put "his penis inside of [her] private[,]" and left.  See id.  The victim also testified that just before leaving, Henderson threatened that if she told anyone about what had happened, he would kill her and her family.  See id.

After four days of testimony, the jury found Henderson guilty as charged.  See (Dkt. # 1, Compl. ¶ 48; Dkt. # 31 ¶ 12; Pls.' Resp. at 7).  The trial court then sentenced Henderson to a term of life in prison.  See (Dkt. # 1, Compl. ¶ 48 Dkt. # 31 ¶ 12; Pls.' Resp. at 7).

Henderson appealed and the appellate court again reversed the conviction on grounds that Henderson was denied effective assistance of counsel.[5]  See (Dkt. # 1, Compl. ¶ 49).

---

[5]At the first trial, a doctor offered testimony on behalf of the prosecution that he found no evidence of sexual abuse.  See Henderson, 2002 Ohio App. LEXIS 6498.  Neither the prosecution nor defense called the doctor as a witness during the second trial.  See id.  The appellate court found that defense counsel's failure to present the doctor to the jury constituted ineffective assistance, particularly since the doctor's previous testimony called into question the victim's credibility.  See id.  While the appellate court determined that defense counsel's deficient tactics were alone sufficient to warrant a reversal, the court concluded its opinion noting:

Although the court is not specifically addressing [Henderson's] first [failure to admit defense exhibit], second [introduction of hearsay], or third [prosecutorial misconduct]

The victim thereafter recanted her claim of Rape.  <u>See</u> (Dkt. # 1, Compl. ¶ 52; Dkt. # 31 ¶ 14; Pls.' Resp. at 7 & Exs. P & Q).  However, the victim later revised her recantation. <u>See</u> (Dkt. # 1, Compl. ¶ 53; Dkt. # 31 ¶ 14 Pls.' Resp. at 8).  The TCPO nonetheless dismissed the indictment against Henderson on August 26, 2003 and indicated that it would not retry Henderson.  <u>See</u> (Dkt. # 1, Compl. ¶ 55; Dkt. # 31 ¶ 15; Pls.' Resp. at 8).  The Trumbull County Court of Common Pleas ordered all documents relating to the case sealed. <u>See</u> (Pls.' Resp. at 8 & Ex. R).  WPD released Henderson from custody.  <u>See</u> (Dkt. # 1, Compl. ¶ 50).  Nevertheless, the WPD allegedly issued subsequent reports indicating that Henderson was a sexual offender.  <u>See</u> (Pls.' Resp. at 8).

### Proceedings before this Court

Henderson, Shelli Henderson (wife), Steven Henderson, Jr. (son) and Shatera Frank (step-daughter) (collectively the "plaintiffs") thereafter filed their Complaint alleging nine claims for relief against three classes of defendants.  <u>See</u> (Dkt. # 1, Compl.).  The first class of defendants (the "Trumbull County defendants") were Trumbull County, Ohio ("Trumbull"); TCPO; Attorney Kovoor; Dennis Watkins, Trumbull County Prosecutor ("Watkins"); and John Doe Supervisors, One-Five.  The second class of defendants (the "Warren defendants") were the City of Warren, Ohio ("City of Warren"); WPD; John Mandopoulos, Chief of

---

assignments of error, we do note that we have serious concerns about those assignments. In cases such as this one where there is no physical evidence to link the defendant to the crime, the prosecution has a duty to avoid prejudicing the jury through the introduction of hearsay or other inadmissible evidence.  If the state has doubts about the weight or sufficiency of it evidence, perhaps the prosecutor should re-evaluate the state's position. <u>Id.</u>

Police ("Mandopoulos"); John Doe City of Warren Police Officers and/or Employees One - Five; and John Doe Supervisors, One-Three City of Warren Police Department. The third class of defendants (the "Children Services defendants") were the Trumbull County Children Services Board ("TCCSB"); Robert Kubiak, Director TCCSB ("Kubiak"); John Doe Employees One-Six; and John Doe Supervisors, One-Six. The Complaint also sought relief from Attorney Kovoor, Mandopoulos, and all John Doe defendants in official and individual capacities.

The Complaint was a model of inartful pleading. A strained construction of the Complaint nevertheless revealed that the plaintiffs were attempting to allege the following claims for relief: The First Claim For Relief alleged violations of 42 U.S.C. § 1983 against all defendants for violations of "due process and privacy, as well as [Hendersons's] right to be free from unreasonable search and seizure, as guaranteed by the United States Constitution and the Constitution of the State of Ohio." (Dkt. # 1, Compl. ¶ 65.) The Second Claim for Relief, captioned "False Arrest / Unreasonable Search and Seizure," was advanced against all defendants and alleged that the "arrest and prosecution . . . without probable cause, resulted in [Henderson's] false arrest, the unreasonable search and seizure of his person, and his wrongful conviction and false imprisonment in violation of the Fourth Amendment of the United States Constitution and a violation of Article I, Section 14 of the Ohio Constitution." (Dkt. # 1, Compl. ¶ 68.) The Third Claim for Relief, styled "Malicious Prosecution," was advanced against all defendants and asserted that the "Defendants' malice in instituting and continuing the prosecution of [Henderson], when probable cause was lacking in the applicable criminal proceedings, ultimately deprived [Henderson] of his right to due process and privacy,

as well as his right to be free from unreasonable search and seizure and false imprisonment, as guaranteed by the United States Constitution, as well as the Ohio Constitution." (Dkt. # 1, Compl. ¶ 71.)     The Fourth Claim For Relief, captioned "Abuse of Process," averred that "Defendants' bad acts before and during trial and after [Henderson's] jury trials, as well as the Defendants' misuse of and misapplying the criminal process, which were committed under color of state law, ultimately deprived [Henderson] of his right to due process and privacy, as well as his right to be free from unreasonable search and seizure and false imprisonment, as guaranteed by the United States Constitution, as well as the Ohio Constitution." (Dkt. # 1, Compl. ¶ 74.)     The plaintiffs further brought a claim for "Defamation/Slander" in their Fifth Claim For Relief arising from the "Defendants' malicious, false and defamatory statements to the juries, the media and others about the Plaintiffs, some of which were published without privilege to their parties, defamed the Plaintiffs and caused them to suffer severe emotional, mental, and physical distress, as well as extreme mental suffering, humiliation, and property damage." (Dkt. # 1, Compl. ¶ 77.) In their Sixth Claim For Relief, the plaintiffs sought damages for "Invasion of Privacy." (Dkt. # 1, Compl. ¶ 80.)     The plaintiffs alleged a Seventh Claim For Relief against Watkins, Kubiak, and the John Doe Supervisors for "Negligent Supervision and Retention." (Dkt. # 1, Compl. ¶ 83.)     The Eighth Claim For Relief was a state law loss of consortium claim, <u>see</u> (Dkt. # 1, Compl. ¶¶ 85-86), while the Ninth Claim For Relief sought damages for Intentional Infliction of Emotional Distress, <u>see</u> (Dkt. # 1, Compl. ¶ 89).

  The Warren Defendants immediately filed motions to dismiss the Complaint. <u>See</u> (Dkt. #3, Dkt. # 4; Dkt. # 5).

The Court held a Case Management Conference on November 5, 2004 whereby it addressed the defendants assertions of absolute and qualified immunity.  See (Dkt. # 19). In accordance with governing law, the Court stayed all discovery and ordered briefing to commence on the immunity issues.  See (Dkt. # 19 at 2) (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).  The Court ordered, however, that "limited discovery may be conducted where necessary to resolve the issues of absolute and qualified immunity" and "[i]n determining whether limited discovery is necessary, the Court requires that the request be presented in writing to the Court and comply with the terms of Rule 56 (f) of the Federal Rules of Civil Procedure." See (Dkt. # 19 at 3).

The Court then directed its attention to the pleading deficiencies present in the Complaint.  While the Court recognized that briefing regarding the immunity issues likely would clarify the claims for relief, it advised the plaintiffs to amend their complaint in order to expressly designate which claims pertained to federal law.  In addition, the Court addressed the pending motions to dismiss and ordered the plaintiffs to respond to said motions on or before November 15, 2004.[6]

All defendants subsequently filed motions for summary judgment asserting absolute and,or qualified immunity from suit.  See (Dkt. # 22; Dkt. # 27; Dkt. # 28; Dkt. # 29).  The instant motion ensued.

The plaintiffs thereafter requested the Court to stay any ruling on the motions for

---

[6]The Court ordered the City of Warren to re-file its motion to dismiss as a motion for summary judgment addressing the immunity defenses.  See (Dkt. # 19 at 6).  The Court therefore required the plaintiffs to address only the motions to dismiss advanced by the WPD and Mandopoulos by November 15, 2004.

summary judgment until the completion of additional discovery.  <u>See</u> (Dkt. # 39).  In the memorandum opinion and order denying the request for discovery but granting additional time to respond to the motions, this Court opined:

> [T]he plaintiffs' roughshod style of pleading creates substantial questions as to the nature of the claims.  For example, the plaintiffs assert all claims (except the negligent supervision / retention [Claim For Relief Seven]) against all defendants.  A straightforward reading of the Complaint reveals that there are various claims that should be limited to one or two classes of defendants.  Specifically, it is inconceivable that the TCCSB falsely arrested and engaged in an unreasonable search and seizure of Henderson as alleged in the Second Claim For Relief.
>
> Additionally, the First Claim For Relief cites 42 U.S.C. § 1983 and alleges violations of the due process clause, the right to privacy, and the right to be free from unreasonable search and seizures, "as guaranteed by the United States Constitution and the Constitution of the State of Ohio."  (Dkt. # 1, Compl. ¶ 65.)  The plaintiffs' First Claim For Relief apparently is a Section[7] 1983 claim seeking to vindicate Henderson's federal rights secured by the 4th and 14th Amendments to the United States Constitution.  The plaintiffs' second, third, fourth and seventh claims for relief likewise refer to violations of the United States Constitution — however, they do not refer to Section 1983.  The is of great import as, absent other statutory remedies, Section 1983 is the *exclusive* vehicle whereby a litigant may seek monetary damages from state or municipal employees for violations of federal law.  <u>See</u> <u>Braley v. City of Pontiac</u>, 906 F.2d 220, 223 (6th Cir. 1990) (stating that section 1983 "creates a right of action for the vindication of constitutional guarantees found elsewhere").  It follows that in the event the plaintiffs are seeking monetary damages in their second (False Arrest / Unreasonable Search and Seizure), third (Malicious Prosecution), fourth (Abuse of Process), and seventh (Negligent Supervision and Retention) claims for relief arising from federal constitutional violations, these claims should be amended to assert claims pursuant to Section 1983. Conversely, in the event the plaintiffs intend to pursue only state law claims (with the exception of the First Claim for Relief), amendments are necessary to delete any reference to federal constitutional violations in the afore-referenced claims.
> . . . .
> The Court further observes as a threshold matter that the plaintiffs have

---

[7] All references to "Section" shall be to that of title 42 of the United States Code, unless otherwise noted.

failed to address the motions to dismiss filed by WPD and Mandopoulos.  As the plaintiffs received notice during the November Case Management Conference that a failure to respond to the motions would result in a potential dismissal of the moving parties, the Court shall proceed to address the motions.

The gravamen of WPD's motion to dismiss is that WPD is not *sui juris*.  See (Dkt. # 3).  It is well-established that the WPD, as a sub-unit of the City of Warren, is not a "person" subject to suit pursuant to Section 1983. See Hoskins v. Oakland County Sheriff's Dep't, 227 F.3d 719 (6th Cir. 2000). However, the WPD is a "political subdivision" subject to suit as defined in Ohio's Political Subdivision Tort Liability Act.  See OHIO REV. CODE ANN. § 2744.01(F); see also, Barstow v. Waller, 2004 Ohio 5746 (Ohio 4th App. Dist. 2004) ("The City of Logan and the Logan Police Department are political subdivisions . . . ."); Winegar v. Greenfield Police Dept., 2002 Ohio 2173 (Ohio 4th App. Dist. 2002) (stating that the Greenfield Police Department is "undoubtedly" a political subdivision); Ziegler v. Mahoning County Sheriff's Dep't, 137 Ohio App. 3d 831 (Ohio 7th Dist. 2000) (finding the same with regard to Austintown Township Police Department).

Therefore, the WPD shall be dismissed as a defendant in any claims brought pursuant to Section 1983.  The WPD nonetheless may be subject to suit under state law.  Accordingly, the Motion of Defendant City of Warren Police Department to Dismiss Plaintiffs' Complaint as to It (Dkt. # 3) is **GRANTED IN PART** and **DENIED IN PART**.

Mandopoulos also advances a motion to dismiss alleging that there lacks any allegation in the Complaint attributing liability to his conduct.  See (Dkt. # 5).  The official capacity suit brought against Mandopoulos is of little import.  It is well-established that a suit brought against a public official in the official's official capacity is tantamount to a suit against the agency in which the official serves.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66-71 (1989).  Consequently, the official capacity suit brought against Mandopoulos is a suit against the City of Warren (in the Section 1983 context) and the WPD (with regard to the state law claims).

The individual capacity suit requires greater analysis.  The Complaint lacks any allegation seeking to attribute liability to Mandopoulos's conduct. The Complaint only identifies Mandopoulous in its introductory paragraphs. See (Dkt. # 1, Compl. ¶¶ 1-2).  Indeed, the Complaint does not identify Mandopoulos in the "Parties" section of the Complaint and there lacks any reference to him in the remaining paragraphs.  Specifically, the first introductory paragraph refers to Mandopoulos — as well as every other defendant — "in seeking relief for Henderson's losses which occurred as a result of his false arrest, false imprisonment, defamation, slander, malicious prosecution, invasion of privacy, and abuse of process."  (Dkt. # 1, Compl. ¶1.)  However, the Complaint fails to provide one "short and plain statement,"

-10-

FED. R. CIV. P. 8(a), linking Mandopoulos to the claims for relief.  Similarly, the second introductory paragraph indicates that the plaintiffs seek to impose liability on Mandopoulos for negligent supervision, (Dkt. # 1, Compl. ¶ 1); however, the allegations presented in the "Negligent Supervision and Retention" claim do not refer explicitly to Mandopoulos, see (Dkt. # 1, Compl. ¶¶ 82-84).

To the extent that the plaintiffs seek to impose liability on Mandopoulos in his individual capacity pursuant to Section 1983, the lone conceivable manner to impose such liability arises from Mandopolous's supervisory responsibilities.  However, Section 1983 liability must be based on more than *respondeat superior*, or the right to control employees.  See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).  The supervisor is not liable for failing to supervise the offending employee unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."  Shehee, 199 F.3d at 300.  "At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Id. (quoting Hays v. Jefferson City, 668 F.2d 869, 874 (6th Cir. 1982) (internal quotations omitted)).  Moreover, when the plaintiff alleges supervisory liability based on failure to train and supervise, or based on creation of a policy or custom, the plaintiff must show that the failure to train and supervise or the policy or custom itself amounts to deliberate indifference on the part of the supervisory officials.  See Doe v. City of Roseville, 296 F.3d 431 (6th Cir. 2002).

Here, the Complaint lacks any averment alleging that Mandopoulos participated or encouraged the purportedly actionable conduct at issue.  There likewise lacks any reference to a failure to train or custom and policy in the WPD.

The Complaint therefore fails to state any claim for relief — under federal and state law — against Mandopoulos in his individual capacity.  It follows that the Court shall dismiss all claims asserted against Mandopoulos in his individual capacity.  Additionally, the official capacity suit asserted against Mandopoulos is tantamount to claims brought against the City of Warren (Section 1983 claims) and the WPD (state law claims) – each of which is a present party to the action. Therefore, the plaintiffs will not suffer any prejudice in the event the Court dismisses the claims asserted against Mandopoulos in his official capacity.  Accordingly, the Motion of Defendant John Mandopoulos, Chief of Police to Dismiss (Dkt. # 5) is **GRANTED**.

(Dkt. # 43 at 9-13.)

## II.    STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56 (c).  "Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In considering such a motion, the court must review all of the evidence in the record.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)).  The movant meets this

burden "by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25).  The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

"The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 250).  "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

### III.    LAW AND ANALYSIS

As discussed *supra*, the Court's prior memorandum opinion and order regarding discovery repeatedly emphasized the opaque nature of the plaintiffs' claims for relief. Indeed, the Court went to great lengths to construe the claims, present governing law for each claim, identify potential deficiencies in the claims, and examine whether discovery was necessary.  See (Dkt. # 43 at 14-23).  Nevertheless, the plaintiffs' memorandum in opposition to the present motions neither attempts to clarify the claims nor address the identified deficiencies.  Furthermore, while the plaintiffs refer to Section 1983 in their memorandum in opposition, their legal arguments pertain exclusively to the statutory immunities applicable to their state law claims.  See (Pls.' Resp. at 10-14).  The plaintiffs do not address in any discernible manner the common law absolute and qualified immunities applicable to Section 1983 actions.

The plaintiffs' memorandum in opposition identifies, however, the singular factual basis emphasized by the plaintiffs in each claim for relief.  Specifically, prior to the issuance of the initial indictment charging Henderson with rape, the TCCSB investigated a claim of sexual abuse against a minor child who had been living with Henderson's alleged victim.  See (Dkt. # 23 ¶ 7).  During this investigation, Henderson's alleged victim informed the TCCSB investigators that she had not been sexually abused. See (Dkt. # 23 ¶ 8; Pls.' Resp., Exs. C & D).  The TCCSB placed this statement into a file regarding the investigation – an investigation that did not proceed to the initiation of any charges by the TCPO.  See (Dkt. # 23 ¶ 10).  The plaintiffs contend that this alleged exculpatory statement was not disclosed to the Grand Jury, Henderson or his counsel at any time throughout the proceedings.[8]  It is the purported failure to disclose alleged exculpatory statements, coupled with Attorney Kovoor's conduct during the trials, which provide the basis underlying each federal claim for relief.

*The federal and state claims subject to absolute and qualified immunities*

Title 42 of the United States Code, section 1983 provides, in pertinent part:

Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects,        o r causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any privileges, or immunities secured by the Constitution and laws, shall be liable to the injured party at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983.   Section 1983 does not establish any individual rights, rather, it is merely

---

[8]The Children Services defendants contend that the alleged  exculpatory statements were provided to Henderson and his counsel during the second trial.  See (Dkt. # 23 ¶ 23;).

a vehicle whereby a litigant may assert a constitutional violation. See Braley v. City of Pontiac, 906 F.2d 220, 223 (6th Cir. 1990) (stating that section 1983 "creates a right of action for the vindication of constitutional guarantees found elsewhere"). It is axiomatic that the provisions of 42 U.S.C. § 1983 are triggered only in the presence of state action and that a private entity acting on its own cannot deprive citizens of certain rights secured by the Constitution. See Lansing v. City of Memphis, 202 F.3d 821 (6th Cir. 2000). To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." Berger v. City of Mayfield Heights, 265 F.3d 399, 405 (6th Cir. 2001) (citing Soper ex rel. Soper v. Hoben, 530 U.S. 1262 (2000)).

The First Claim For Relief, styled "A Violation of USC Section 1983" alleges violations of due process, the right to privacy, and the right to be free from unreasonable searches and seizures as secured by federal and state law. See (Dkt. # 1, Compl. ¶¶ 64-66). This purported Section 1983 claim appears to be an overarching claim encompassing the remaining four federal claims (the 2d, 3d & 4th claims for relief). Simply, the claim does not specify in any discernible manner the actionable conduct of the defendants. Therefore, the Court shall disregard this claim as duplicitous of those alleged in the second, third, and fourth claims for relief.

The Second Claim For Relief alleges that the "arrest of and prosecution of [Henderson], without probable cause, resulted in his false arrest, the unreasonable search and seizure of his person, and his wrongful conviction and false imprisonment in violation of the Fourth Amendment of the United States Constitution and a violation of Article I, Section 14

-15-

of the Ohio Constitution." (Dkt. # 1, Compl. ¶ 68.)   As discussed *supra*, the plaintiffs assert their claim against all defendants.

Assuming the plaintiffs are advancing a Section 1983 claim for the violation of Henderson's Fourth Amendment rights, the threshold question is whether the defendants violated that right.   This holds true irrespective of whether claim seeks to impose individual, supervisory, or municipal liability.  See   Sallier v. Brooks, 343 F.3d  868, 878 (6th Cir. 2003) (holding that a plaintiff seeking to hold an individual liable under Section 1983 must demonstrate at the outset that the facts, when viewed in the light most favorable to them, show that a constitutional violation has occurred); Comstock v. McCrary, 273 F.3d 693, 712-13 (6th Cir. 2001) (finding that a critical element of a supervisory liability claim is the existence of a constitutional infringement (or for the purposes of a motion for summary judgment, a question of fact regarding the existence of a constitutional infringement) committed by the supervisor's subordinates); Watkins v. City of Battle Creek, 273 F.3d 682 (6th Cir. 2001) (determining that municipal liability could not be imposed in the absence of a constitutional violation).

An arrest, imprisonment  and prosecution based on probable cause does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures.   See Michigan v. DeFillippo, 443 U.S. 31, 36,(1979) (citations omitted).   A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime.  See Northrop v. Trippett, 265 F.3d 372, 379 (6th Cir. 2001) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).   In addition, probable cause is presumed when there has been a grand jury indictment.  See Friedman v. United

States, 927 F.2d 259, 262 (6th Cir. 1991); see also Ex parte United States, 287 U.S. 241, 250 (1932) (holding that has long been settled that the finding of an "indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer."); Deoma v. Shaker Heights, 68 Ohio App. 3d 72, 77, 587 N.E.2d 425 (Ohio 8th App. Dist. 1990) ("The return of an indictment by the grand jury is evidence of probable cause; when an indictment has been returned by the grand jury, the plaintiff has the burden of producing substantial evidence to establish lack of probable cause.  Plaintiff must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular." (Citations omitted.)).

The undisputed facts demonstrate that the Grand Jury issued an indictment charging Henderson with rape.  A presumption therefore arises that the defendants arrested, searched and imprisoned Henderson upon probable cause.  See Friedman, 927 F.2d at 262.  The plaintiffs do not attempt to rebut this presumption in their memorandum in opposition.[9] Indeed, the plaintiffs do not address their false arrest/ false imprisonment/wrongful conviction claim. Consequently, the defendants are entitled to judgment on the claims presented in the plaintiffs' Second Claim For Relief.

The Third Claim For Relief alleges malicious prosecution against all of the

---

[9]The presumption of probable cause arising from a Grand Jury indictment is conclusive and irrebutable as a matter of federal law.  See Higgason v. Stephens, 288 F.3d 868, 876-77 (6th Cir. 2002); see also Bakos v. City of Olmstead Falls, 73 Fed. Appx. 152 (6th Cir. 2003). The Court acknowledges, however, that the presumptive force of a grand jury indictment may be rebutted as a matter of Ohio law.

defendants.    The viability of a federal malicious prosecution claim has been debated in the United States Court of Appeals for the Sixth Circuit and remains unresolved.   See Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003). In Thacker the Sixth Circuit reviewed it history of dealing with such claims: (1) the need for an accompanying Fourth Amendment, as opposed to a Fourteenth Amendment, violation in order to bring a malicious prosecution claim, citing Spurlock v. Satterfield, 167 F.3d 995, 1005-07 (6th Cir. 1999); (2) then the preclusion of a malicious prosecution claim where a separate Fourth Amendment violation was present, citing Frantz v. Village of Bradford, 245 F.3d 869, 875-77 (6th Cir. 2001); and (3) ultimately returning to the original rule in Spurlock, citing Darrah v. City of Oak Park, 255 F.3d 301, 308-311 (6th Cir. 2001).   The Thacker court did not ultimately resolve the issue as to the elements needed in a federal malicious prosecution claim, except to recognize that, in order to proceed with a claim "at a minimum, 'there [can be] no probable cause to justify [his] arrest and prosecution.'" 328 F.3d at 259 (citing Darrah, 255 F.3d at 312); see also McKinley, supra ("While the state of the law of malicious prosecution is somewhat uncertain in this circuit,   it nonetheless remains firmly established that where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie." (citations omitted)).

To prevail on a malicious prosecution claim under Ohio law, a plaintiff must show: (1) malice in instituting and continuing the prosecution; (2) termination of the proceedings in favor of the accused; and (3) lack of probable cause.   See Trussell v. General Motors Corp., 53 Ohio St. 3d 142 (1990).

Thus, pursuant to federal and Ohio law, the critical inquiry in a malicious prosecution

-18-

claim is the absence of probable cause.  As discussed *supra*, the issuance of the indictment by the  Grand Jury precludes the plaintiffs from demonstrating this critical element of their claim.

In addition, the Court observes that the plaintiffs allege no facts demonstrating that the Warren defendants or the Children Services defendants engaged in any conduct giving rise to a malicious prosecution claim.  See McKinley v. City of Mansfield, 404 F.3d 418, 444 (6th Cir. 2005) (holding that "named defendants cannot be held liable for malicious prosecution when [they] did not make the decision to prosecute [the plaintiff]." (internal citation and quotation omitted)).  Accordingly, the third claim for relief fails against these defendants.

Furthermore, to the extent the plaintiffs' third claim for relief could be construed to support a prima facie malicious prosecution claim against the Trumbull County defendants, such claims are subject to absolute prosecutorial immunity.

Prosecutors are entitled to absolute immunity for conduct intimately associated with the judicial phase of the criminal process.  See Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  This immunity extends to a prosecutor's decision on whether to prosecute a case. See Ireland v. Tunis, 113 F.3d 1435, 1446 (6th Cir. 1997).  Absolute prosecutorial immunity is not defeated by showing that a prosecutor acted wrongfully or even maliciously.  The decision on whether or not to prosecute is unquestionably advocacy and is at the heart of the Imbler holding.  See Grant v. Hollenbach, 870 F.2d 1135, 1138 (6th Cir. 1989).

The plaintiffs appear to allege malicious prosecution arising from the Trumbull County defendants' conduct in allegedly withholding exculpatory material from the Grand

Jury and Henderson and his counsel, Attorney Kovoor's prosecutorial misconduct during the first trial, and the decision to re-try Henderson following the first reversal by the state appellate court.  To the extent any of this conduct can be construed a malicious in nature, the Trumbull County defendants are absolutely immune from suit.[10]    See Buckely v. Fitzsimmons, 509 U.S. 259, 273 (1993) (holding that "absolute immunity applies to "acts . . .including professional evaluation of the evidence assembled by the police and appropriate for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."); Imbler, 424 U.S. at 427 n. 27 (finding that the prosecutor was absolutely immune even for allegedly knowingly using perjured testimony and suppressing exculpatory material at trial).

The Fourth Claim For Relief alleges Abuse of Process.  The United States Court of Appeals for the Sixth Circuit has not determined specifically whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to Section 1983. See Voticky v. Timberlake, 412 F.3d 669 (6th Cir. 2005).  The elements of the tort of abuse of process under Ohio law are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."   Yaklevich v. Kemp, Schaeffer & Rowe Co., 68

---

[10]Ohio Revised Code section 2744.03(A)(7) states: "The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant to such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." Thus, R.C. 2744.03(A)(7) preserves the absolute immunity available to prosecutors at common law.

Ohio St.3d 294, 298 (1994) (citations omitted). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." <u>Robb v. Chagrin Lagoons Yacht Club, Inc.</u>, 75 Ohio St. 3d 264, 271 (1996).

The plaintiffs have failed to allege any improper purpose in the defendants' initiation of the proceedings. Additionally, any abuse of process claim arising from the conduct of the Trumbull County defendants likewise would be subject to absolute prosecutorial immunity for the reasons discussed *supra*.

The plaintiffs therefore have failed to demonstrate a genuine issue of material fact as to the existence of a constitutional violation in the first, second, third and fourth claims for relief asserted in the Complaint. Accordingly, judgment is rendered in favor of all defendants on said claims. <u>See</u> <u>Watkins</u>, 273 F.3d at 687 (holding that where the individual defendants are not liable, then the municipality cannot be liable).

The Seventh Claim For Relief alleges Negligent Supervision / Retention against Watkins and Kubiak and seeks relief for deprivations of various constitutional rights. The plaintiffs do not address this claim in their memorandum in opposition and the resultant failure to clarify this claim compels this Court to find that it sounds entirely in state tort law.

The Court declines to address the Negligent Supervision/Retention claim as well as the plaintiffs' remaining state law claims for invasion of privacy, defamation, loss of consortium and intentional infliction of emotional distress. The Court has resolved the

-21-

issues of absolute and qualified immunity and the surviving claims are actionable solely under state law principles.   In light of the fact that no discovery has commenced on these claims, and there lacks any claim giving rise to original jurisdiction, such matters are best resolved in the state forum.  See United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby orders that that (1) Summary Judgment Motion of Defendants Trumbull County Children Services Board and Robert Kubiak (applicable also to unidentified CSB Supervisors and Employees), see (Dkt. # 22); (2) Motion for Summary Judgment of City of Warren Police Department, see (Dkt. # 26); (3) Motion for Summary Judgment of Defendant City of Warren, Ohio, see (Dkt. # 27); and (4) Motion for Summary Judgment, see (Dkt. # 29), filed on behalf of Trumbull County, Ohio, Trumbull County Prosecutor's Office, Sarah Kovoor, Dennis Watkins, and John Doe Supervisors, One-Five are **GRANTED in PART and DENIED in PART**.    Summary judgment is rendered in favor of all defendants on the first, second, third and fourth claims for relief asserted in the Complaint.    The remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**/s/ Peter C. Economus - September 30, 2005**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**